26790. HARTSFIELD COMPANY *v.* WILKINS *et al.*

DECIDED MAY 4, 1938.

*Robert T. Efurd, Mose S. Hayes,* for plaintiff.
*LaFayette C. Dotson,* for defendants.

FELTON, J. This is an action on a promissory note secured by bill of sale to certain furniture. Mrs. Wilkins was the only defendant to answer, and at the trial of the case the jury returned a verdict in her favor, and to the order of the judge of the municipal court of Atlanta denying the motion for new trial, an appeal was

taken to the appellate division and the trial court was affirmed. The defense offered by Mrs. Wilkins was that she was paying the debt of her husband; that the transactions had with the company were mere colorable transactions making her surety for her husband; that she signed the notes sued upon because she was under duress and was coerced by her husband.

Mrs. Wilkins's testimony was in substance: "These are my signatures. I think my husband applied for the loan; I did not leave their office with a penny; I went in and signed the papers. I don't recall when was the first time I borrowed any money from the Hartsfield Company; I think the checks were made out to me, because I remember endorsing them, I couldn't say whether they had his name on them or not, all I can say is that he got every penny of money and walked out of their place of business with it and I have never gotten any benefit from it. I told the Hartsfield Company this loan was being made for my husband; he applied for it and brought the papers to my office and had me read over it and told me it was necessary for me to sign it. My husband told me that. I did not tell the Hartsfield Company I was signing the note as surety and they did not ask me. We both went to the Hartsfield Company and applied for this loan. This is my signature on all these applications to the Hartsfield Company. I signed each and every one as endorser so that he might get the money. I made these applications and each check was made to me; the Hartsfield Company never asked me and I never told them that I was signing as an endorser or surety. Each time we would borrow up there he would bring the papers out to me, and I would almost swear that on two occasions he brought these checks out there and I endorsed them and he carried them back up there and got them cashed. The last time I was up there, I walked over to the desk, endorsed the check, and Mr. Wilkins walked out with every penny of the money; I went to the window and got the money and turned it over to him in their place of business and he walked out. On that last time I went to the window and got the money. I received no benefit either directly or indirectly from this check for $73. At the time my endorsements were made on these checks my husband owed them some money on a previous loan; I know he used this money to pay the company a debt he owed prior to giving these checks. I don't know which of these checks Mr. Wilkins

got, because I don't know how much he owed them at the time these checks were written, but one of them went back as a renewal. They gave me both checks and I endorsed one of them and gave it back to them; I got the money on the other one and gave it to Mr. Wilkins. Both of us signed the note for the money we previously owed, and he got all the last money. I never left the office with a dime. I was asked to go there about a week before I went and I refused to go. My husband kept nagging me and threatening everything if I did not do it, and of course I did not have any occasion to be borrowing the money. He kept worrying and nagging me until I went up there and endorsed it and went on it as security. I never told the Hartsfield Company he was harassing me until I signed the papers. These are my signatures on these other checks. I don't know whether my husband ever made a loan personally up there, all I know is these I went on as security. My husband coerced me into signing each of these papers."

T. M. Waldrep testified in substance for the plaintiff: "I am secretary for the Hartsfield Company and my duty is to pass upon loans. I passed upon this application, the amount of the loan past due and unpaid is $99.80. At the time this note was executed Mr. Wilkins did not owe us anything. After the check was issued to Mrs. Wilkins she endorsed it and got the money. I did not handle it personally. The same thing applies to the check for $105.70. At that time I think Mrs. Wilkins owed the company some money. Mr. Wilkins signed the note. At the time we made the last loan Mrs. Wilkins owed us $105.70. I claim that Mrs. Wilkins made the loan and received the money and paid it back to the company on a former loan. Mrs. Wilkins is the only maker of this note." Helen Patterson Anthony testified for the plaintiff in substance: "I handled this transaction with Mrs. Wilkins when she came to the office. I gave her the money for this check for $73.80. Mrs. Wilkins endorsed this check for $105 to pay the company the balance she owed. Mr. Wilkins never owed any money personally to the Hartsfield Company. Mrs. Wilkins was the maker. He signed the note with his wife. I remember giving her the money. Mr. Wilkins was with Mrs. Wilkins." The documentary evidence introduced by the plaintiff included four applications for loans signed by Mrs. Wilkins, which stated that she

was a married woman and that the loan was for the benefit of her personal estate, the checks issued for the various loans endorsed by Mrs. Wilkins, and the note sued upon.

On the question as to whether the note sued on was for a prior debt of her husband, Mrs. Wilkins's testimony was conflicting. She stated that the note sued on was for a prior debt of her husband, and again she stated that she did not know whether her husband ever made a loan personally. Her testimony must be construed strongly against her. *Long Cigar & Grocery Co.* v. *Harvey,* 33 *Ga. App.* 236 (2) (125 S. E. 870). The testimony of the employees of the Hartsfield Company is to the effect that her husband had never owed them any money personally. There is therefore no evidence that the husband ever borrowed any money, or that he was separately indebted to the Hartsfield Company at the time of the execution of the note sued upon. The fact that she turned the proceeds of the loans over to her husband, even if the company knew it, would not affect her liability. There was no evidence to the effect that the company knew of any duress by the husband. The appellate division of the municipal court of Atlanta erred in affirming the trial court's finding in favor of Mrs. Wilkins.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*